| | | |
|---|---|---|
| STEVEN E. RIPOLL | * | CIVIL ACTION NO. 2:23-cv-04602 |
| | * | |
| Plaintiff | * | |
| | * | |
| VERSUS | * | JUDGE DARREL JAMES PAPILLION |
| | * | |
| ALLIED TRUST INSURANCE | * | |
| COMPANY | * | MAGISTRATE MICHAEL NORTH |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ANSWER

**NOW INTO COURT**, through undersigned counsel, comes Allied Trust Insurance Company (hereinafter "Allied Trust"), who submits its answer to the Complaint ("Complaint for Damages") of Plaintiff, Steven E. Ripoll (hereinafter "Plaintiff"), and respectfully responds as follows:

## FIRST DEFENSE

Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Petition fails to state a claim, cause, or right of action upon which relief may be granted against Allied Trust. In support of this defense, Allied Trust asserts the following:

**A.** In the above captioned matter, Plaintiff alleged both breach of contract and claims of bad faith.

**B.** This claim was reported to Allied Trust on or about August 31, 2021. Allied Trust timely inspected the property and issued a below deductible letter on September 23, 2021.

**C.** On April 4, 2022, MMA issued a letter of representation with no evidence of additional damages. Allied Trust immediately requested any information supporting additional damages including any estimates, invoices, or photographs.

**D.** On June 2, 2022, MMA provided an estimate in the amount of $119,777.84.

**E.** On June 8, 2022, Allied Trust invoked appraisal. For the next two months, Allied Trust repeatedly followed up with MMA regarding appraisal and received no response.

**F.** On August 23, 2022, Allied Trust filed a Complaint for Declaratory Judgment seeking to compel the appraisal process given MMA's failure to respond to same. This action was numbered 2:22-cv-02811.

**G.** Shortly after, Plaintiff communicated directly to counsel for Allied Trust that he was not aware of any claim against Allied Trust. Plaintiff further communicated that he never agreed to representation by MMA.

**H.** Given the gravity of these assertions, counsel for Allied Trust turned to this honorable Court for assistance.

**I.** On December 1, 2022, this honorable Court held a status conference with Plaintiff and counsel for Allied Trust to address the severity of Plaintiff's claims regarding MMA.

**J.** During this conference, Plaintiff made several clear statements[1]:

- Plaintiff was not a client of MMA and did not authorize them to make a demand on his behalf;

- The $119,777.84 estimate was inaccurate and exceeded the amount of damages to his home;

- He had attempted multiple prior conversations with MMA to little or no avail;

- When he was finally able to reach MMA, Plaintiff told them he wished to drop any claim against Allied Trust;

- He wished to dismiss all claims against Allied Trust for damages to his property.

---

[1] See Case 2:22-cv-02811 Rec. Doc. 24 "Redacted Order Dismissing Case"; attached hereto as Exhibit A.

**K.** On December 15, 2022, this honorable Court dismissed all claims without prejudice given his testimony.

**L.** On January 11, 2023, Allied Trust reached out to Plaintiff to discuss his claim and to see if any additional damages were owed. Plaintiff never responded.

**M.** Following that dismissal, Allied Trust received no further contact from Plaintiff or any law firm claiming to represent Plaintiff. At no time did Allied Trust ever have knowledge of attorney representation of the Plaintiff by Galindo Law Firm or any other firm besides MMA.

**N.** Despite his prior testimony, the instant suit was filed on August 27, 2023, by Plaintiff's counsel, Galindo Law Firm. The suit was served on Allied Trust on September 25, 2023.

**O.** Plaintiff has already represented that he wished to dismiss all claims against Allied Trust for damages due to Hurricane Ida. Given the prior circumstances of this claim, Allied Trust is forced to question if Plaintiff is even aware of the instant lawsuit.[2]

**P.** In violation of FED. R. CIV. P. Rule 11(b)(3), Plaintiff's allegations lack the minimum support for Plaintiff's factual contentions against Defendant.

**Q.** Defendant reserves the right to allege Galindo Law Firm's liability to Defendant under 28 U.S.C. § 1927, which provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

---

[2] *Id*. at paragraph 19.

**SECOND DEFENSE**

To the extent that Plaintiff has already received payment from Allied Trust for their loss, Allied Trust avers that those payments were appropriate, that Plaintiff has already been paid everything that is owed under the insurance policy and in the event of a further judgment in favor of Plaintiff, Allied Trust claims a credit or a set-off for all amounts paid.

**THIRD DEFENSE**

To the extent that Allied Trust herein is legally entitled to any credit or set-offs for any amounts previously paid or made in the future to the Plaintiff herein, Allied Trust hereby claims those credits or set-offs against said credits or set-offs against any eventual award made to the Plaintiff, and to the extent that the Allied Trust has made any payments to which Plaintiff is not entitled, Allied Trust reserves its rights to recover those amounts by cross claim or counter-claim.

**FOURTH DEFENSE**

At all times, Allied Trust adjusted Plaintiff's claims in good faith and with fair dealing, in accordance with the terms and conditions of the applicable Allied Trust policy and in compliance with applicable statutory and jurisprudential law.

**FIFTH DEFENSE**

Allied Trust avers that the damages claimed herein were caused by a non-covered event and/or peril that is excluded under the applicable policy of insurance, including but not limited to, the following exclusions:

**SECTION I – EXCLUSIONS**

**A.** We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

. . .

**2.**          **Earth Movement**

Earth Movement means the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to:

**a.** Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

**b.** Landslide, mudslide, mudflow;

**c.** Subsidence or sinkhole;

**d.** Erosion and/or scouring;

**e.** Movement resulting from improper compaction, decay of buried or organic materials, site selection, site preparation;

**f.** Settling, cracking or expansion of foundation;

**g.** Soil movement resulting from blasting or demolition; mining;

**h.** Any earth movement caused, in whole or in part, by "Hydraulic Fracturing"

**i.** Any other earth movement including earth sinking, rising or shifting; cracking.

This Exclusion **A.2.** applies regardless of whether any of the above, in **A.2.a.** through **A.2.i.** is caused by any act of nature or any man-made event or is otherwise caused. However, direct loss by fire, explosion or theft resulting from any of the above, in **A.2.a**. through **A.2.i.** is covered.

This Exclusion **A.2**. does not apply to loss by theft.

ALLIED HO3 SP LA 19.09 (Pages 4-5 of 14)

.  .  .

**3. Water**

This means:

**a.** Any flood, surface water, waves, including tidal wave, tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water which:

**(1)** Backs up through sewers and/or drains; or

**(2)** Overflows or is otherwise discharged from a sump, sump pump, or related equipment or any other system designed for the removal of subsurface water which is drained from a foundation area of a structure;

**c.** Water below the surface of the ground, regardless of its source, including water which exerts pressure on or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, basement, swimming pool or other structure; or

**d.** Water-borne material carried or otherwise moved by **A.3.a** through **A.3.c.** of this Exclusion; This exclusion **A.3**. applies

5

regardless of whether any of the above, in **A.3.a.** through **A.3.d.** is caused by, or originating from, in whole or in part, by any act of nature, or any man-made events, or both, or is otherwise caused.

This Exclusion **A.3.** applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, reservoir, water main, seawall, embankments or any other boundary or containment system. However, direct loss by fire, explosion or theft resulting from any of the above, in **A.3.a.** through **A.3.d.** is covered.

ALLIED HO3 SP LA 19.09 (Page 5 of 14)

. . .

4.     **Power Failure**
Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

HO 00 03 05 11 (Page 13 of 24)

. . .

11.     **Diminished Value**
We do not cover any loss due to diminished value of any property covered under this policy.

ALLIED HO3 SP LA 19.09 (Page 5 of 14)

. . .

12.     **"Named Storm", Windstorm or Hail Loss**
We do not cover any loss to awnings caused by or resulting from a "Named Storm", Windstorm or Hail.

ALLIED HO3 SP LA 19.09 (Page 5 of 14)

. . .

13.     **Existing Damage**
a.     Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or
b.     Claims or damages arising out of workmanship, repairs or lack of repairs because of or originating from or in connection with damage which occurred prior to policy inception. This exclusion does not apply in the event of a total loss caused by a Peril Insured Against.

.    .    .

> **14.    Temperature or Dampness**
> We do not cover any loss caused by extremes of temperature, dampness or dryness of atmosphere, or water vapor or condensation, gradual deterioration, wet or dry rot, or warping not caused by a covered peril, to your Dwelling, Other Structures or Personal Property. This exclusion does not apply to loss caused directly by rain, sleet, snow or hail.

.    .    .

> **16.    Constant and/or Repeated Seepage and/or Leakage** We not pay for any loss arising from, caused by, originating from or in connection with any constant or repeated seepage and/or leakage of water, steam, presence of and/or condensation of humidity, humidity, moisture, vapor, which occurs over a period 14 days or more, whether hidden or not and results in damage such as wet or dry rot, "fungi", "bacteria", deterioration, rust, decay or any other corrosion and/or any damage.

.    .    .

**B.**    We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**1.**    Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.

**2.**    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

**3.**    Faulty, inadequate or defective:
**a.**    Planning, zoning, development, surveying, siting;
**b.**    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
**c.**    Materials used in repair, construction, renovation or remodeling; or
**d.**    Maintenance;
of part or all of any property whether on or off the "residence premises".

**SIXTH DEFENSE**

Plaintiff's claims against Allied Trust are barred or reduced to the extent that Plaintiff failed

to exercise ordinary care and caution to protect the damage to their property:

**SECTION I – EXCLUSIONS**

A.    We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

.   .   .

5.    **Neglect**
Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

HO 00 03 05 11 (Pages 12-13 of 24)

**SEVENTH DEFENSE**

In the further alternative, Plaintiff's claims are barred to the extent covered by other

insurance:

G.    **Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

1.    Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

2.    A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

HO 00 03 05 11 (Page 15 of 24)

**EIGHTH DEFENSE**

In the alternative, Allied Trust alleges and avers that Plaintiff was underinsured and the co-

insurance penalty applies.

## NINETH DEFENSE

To the extent that Plaintiff's Complaint claims that they are entitled to recovery under the insurance policy in accordance with LSA-R.S. 22:1318, Louisiana's Valued Policy Law, Allied Trust denies that the Valued Policy Law applies to this claim. Allied Trust further avers that Plaintiff has not suffered a total loss. Allied Trust further avers that an award to Plaintiff under Louisiana's Valued Policy Law would impair the obligations of contracts, would result in a taking without just compensation, would interfere with interstate commerce, would constitute a deprivation of property without due process, and would deprive Allied Trust of equal protection of the laws, all in contravention of the Constitutions of the United States of America and the State of Louisiana.

## TENTH DEFENSE

Plaintiff's claims are barred in whole or in part to the extent that they failed to satisfy all of their obligations pursuant to the following policy provisions:

**C.** **Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.** Give immediate notice to us;

**2.** Notify the police of loss by theft or vandalism or malicious mischief and:

    **a.** File a police report describing all items stolen and/or property damaged;

    **b.** Submit the filed report to us; and

    **c.** Cooperate with the police in **their** investigation;

**3.** Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.** Protect the property from further damage. If repairs to the property are required, you must:

      **a.**      Make reasonable and necessary repairs to protect the property; and

      **b.**      Keep an accurate record of repair expenses;

**5.**      Cooperate with us in the investigation and processing of a claim;

**6.**      Prepare a written inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss for each item. Attach all bills, receipts and related documents that verify or support the information stated in the inventory;

**7.**      As often as we reasonably require:

      **a.**      Show the damaged property;

      **b.**      Provide us with records and documents we request and permit us to make copies; and

      **c.**      Provide to us or execute an authorization which allows us to obtain on your behalf, records and documentation we deem relevant to the investigation of your loss; and

      **d.**      You, any "insured" and anyone you hire in connection with your claim under this policy must:

      **(1)** Submit to examinations under oath and recorded statements, while not in the presence of another "insured"; and sign the same;

      Representations made by any of the preceding persons who appear in the examinations under oath and/or recorded statements will be deemed to be your representations.

**8.**      Send to us your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      **a.**      The time and cause of loss;

      **b.**      The interests of all "insureds" and all others in the property involved and all liens on the property;

      **c.**      Other insurance which may cover the loss;

      **d.**      Changes in title or occupancy of the property during the term of the policy;

      **e.**      Specifications of damaged buildings and detailed repair estimates;

      **f.**      The inventory of damaged personal property described in **6**. above;

      **g.**      Receipts for additional living expenses incurred; and

      **h.**      Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss. This proof of loss must be sent to us within:

     **(1)**    180 days after our request, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials; however, this 180-day period does not commence until the state of emergency or disaster has ended and you have access to your property; or

     **(2)**    60 days after our request in all other cases.

**9.**    Retain any and all damaged property for inspection by the Company.

**10.**    Obtain Company approval before permanent repair or replacement of damaged property begins.

HO3 SP LA 19.09 (Pages 6-7 of 14)

.   .   .

**H.**    **Suit Against Us**

No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the date of loss.

HO 00 03 05 11 (Page 16 of 24)

## ELEVENTH DEFENSE

In the event that it is discovered that Plaintiff made any material misrepresentations in connection with their claim for recovery for damages under the policy or in the policy application, Allied Trust pleads such representations are in violation of the terms and conditions of said policy, thereby voiding coverage and any obligations therein, pursuant to the terms and conditions of said policy, which are plead as if copied herein *in extenso*.

**R.**    **Concealment Or Fraud**

.   .   .

**2.**    With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this Policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

     **a.**    Intentionally concealed or misrepresented any material fact or circumstance;

     **b.**    Engaged in fraudulent conduct; or

     **c.**    Made false statements;
        relating to this insurance.

**3.** However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the Policy, coverage will only be denied if the conduct was committed with the intent to deceive.

HO3 SP LA 19.09 (Page 8 of 14)

## TWELFTH DEFENSE

The Allied Trust Policy imposes affirmative duties upon Plaintiff that includes that Plaintiff

submit to the appraisal process in the event that the parties disagree on the amount of the loss:

**F.** **Appraisal**
If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party.

Each party will:
**1.** Pay its own appraiser; and
**2.** Bear the other expenses of the appraisal and umpire equally.

HO3 SP LA 19.09 (Page 7 of 14)

## THIRTEENTH DEFENSE

La. R.S. 22:1311 contains the Standard Fire Policy, which is attached to every policy of

fire insurance in Louisiana. The Standard Fire Policy provides as follows regarding appraisal:

**Appraisal** - In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then on request of the insured or this Company such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and failing to agree, shall submit their differences, only,

to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

La. R.S. § 22:1311(F)(2)

## FOURTEENTH DEFENSE

In addition, LSA-R.S. 1892(G) contains an appraisal provision, which states as follows:

Appraisal. If you and this Company fail to agree as to the amount of loss, either party may demand that the amount of the loss be set by appraisal. If either party makes a written demand for appraisal, each party shall select a competent appraiser and notify the other party of their appraiser's identity within twenty days of receipt of the written demand for appraisal. The appraisers shall select a competent and impartial umpire; but, if after fifteen days the appraisers have not agreed upon who will serve as umpire, the umpire shall be appointed by a judge of the court of record in which the property is located. The appraisers shall then appraise the loss. If the appraisers submit written notice of an agreement as to the amount of the loss to this Company, the amount agreed upon shall set the amount of the loss. If the appraisers fail to agree within thirty days, the appraisers shall submit their differences along with any supporting documentation to the umpire, who shall appraise the loss. The appraisers may extend the time to sixty days for which they must agree upon the amount of loss or submit their differences and supporting documents to the umpire, if the extension is agreed to by the appraisers from both parties. A written agreement signed by the umpire and either party's appraiser shall set the amount of the loss, pursuant to the appraisal process, but shall not preclude either party from exercising its rights under the policy or the law. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the expenses of the umpire shall be divided and paid in equal shares by you and this Company. If there is an appraisal award, all applicable policy terms, limits, deductibles, and conditions will still apply. If you file a lawsuit relative to this policy against this Company prior to a demand for appraisal, the lawsuit will be held in abatement until the execution of an appraisal award.

## FIFTEENTH DEFENSE

Allied Trust avers that it has not been provided with satisfactory proof of loss as is required by the jurisprudential law, statutory authority and the terms, conditions, provisions and exclusions of the subject policy.

## SIXTEENTH DEFENSE

Allied Trust adjusted the Plaintiff's claims in good faith, in accord with the terms and conditions of the applicable policy and in compliance with any applicable statutory or jurisprudential law.

## SEVENTEENTH DEFENSE

To the extent that Plaintiff has received money from any state and/or federal agency or program, and that Plaintiff has assigned and/or subrogated their rights to said state or federal agency or program, Allied Trust avers that Plaintiff is not the proper parties to prosecute this action and said federal or state agency or program is the proper party to bring this action.

## EIGHTEENTH DEFENSE

Plaintiff has no right or cause of action to the extent of the interests of the mortgagee holding the mortgage on the property.

## NINETEENTH DEFENSE

The liability of Allied Trust in this matter, if any, is dependent solely upon a policy of insurance, which, as a written document, is the best evidence of its terms, conditions, provisions and exclusions and Allied Trust pleads such terms, conditions, provisions and exclusions as if copied herein *in extenso*:

### SECTION I – PERILS INSURED AGAINST

**B. Coverage A – Dwelling and Coverage B – Other Structures**

1. We insure for sudden and accidental direct physical loss to property described in Coverages **A** and **B**.
2. We do not insure, however, for loss:
   a. Excluded under Section **I** – Exclusions;
   b. Involving collapse, including any of the following conditions of property or any part of the property:
      **(1)** An abrupt falling down or caving in;
      **(2)** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**(3)** Any cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion as such condition relates to **(1)** or **(2)** above; except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or

**c.** Caused by:

**(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply. For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

**(5)** Caused by or originating from any constant or repeated seepage or leakage of water or steam or the presence of condensation of humidity, moisture, or vapor, over a period of 14 or more days from within a plumbing, sprinkler system, or from within or around any household appliance, shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceiling, or floors.; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under **Coverage C.** Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, rodents or insects;

**(h)** Nesting or infestation, or discharge or release of waste products or secretions, by any animals; or

**(i)** Animals owned or kept by an "insured".

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage A or B resulting from a sudden and accidental discharge or overflow of water or steam from within a: Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises". or

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3**. Water, Paragraphs **a**. and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b**. and **c.** above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

## B.    Coverage C – Personal Property

We insure for sudden and accidental direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in Section **I** – Exclusions.

**1.    Fire Or Lightning**

**2.    Windstorm Or Hail**

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building. This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

.    .    .

**12.    Accidental Discharge Or Overflow Of Water Or Steam**

**a.**    This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

**b.**    This peril does not include loss:

**(1)**    To the system or appliance from which the water or steam escaped;

**(2)**    Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

**(3)**    On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(4)**    Caused by any constant or repeated seepage or leakage of water or steam or the presence of condensation of humidity, moisture, or vapor, over a period of 14 or more days from within a plumbing, sprinkler system, or from within or around any household appliance, shower stall, shower tub, tub

installation or other plumbing fixture, including their walls, ceiling, or floors.

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section **I** – Exclusion **A.3.** Water, Paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

**13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging**

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

HO 00 03 05 11 (Pages 9-11 of 24) as amended by HO3 SP LA 19.09 (Page 4 of 14)

<u>**TWENTIETH DEFENSE**</u>

In the alternative, Plaintiff's claims must be calculated according to the Policy's Loss Settlement Provision.

**D. Loss Settlement**

In this **Condition D.,** the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11**. Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

**1.** Property of the following types:

**a.** Personal property;

**b.** Awnings, carpeting, household appliances, window air conditioning units, outdoor antennas, above ground pools, and outdoor equipment, whether or not attached to buildings;

**c.** Structures that are not buildings; and

**d.** Grave markers, including mausoleums;

**e.** Aluminum framed screened enclosures, pool cages, and aluminum framed carports when loss or damage is caused directly and/or indirectly, by any wind, windstorm, "Named Storm", Tornado or hail;

**f.** Solar panels; solar power or water heating systems including solar panels, pipes supplying and returning water to solar panels, and

equipment or devices controlling solar power or water heating systems when loss or damage is caused, directly and/or indirectly, by any wind, windstorm, "Named Storm" tornado or hail.

**g.** Any structure defined as part of Coverage **B** – Other Structures unless the structure is constructed of the same or substantially the same material as that of the dwelling and is attached to a permanent concrete foundation when loss or damage occurs;

at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.** Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

**a.** If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, without deduction for depreciation, but not more than the least of the following amounts:

**(1)** The limit of liability under this policy that applies to the building;

**(2)** The replacement cost of that part of the building damaged with material of like kind and quality; or

**(3)** The necessary amount actually spent to repair or replace the damaged building.

If the building is rebuilt at a new premises, the cost described in **(2)** above is limited to the cost which would have been incurred if the building had been built at the original premises.

**b.** If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

**(1)** The actual cash value of that part of the building damaged; or

**(2)** That proportion of the cost to repair or replace, without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

        **(2)**     Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

        **(3)**     Underground flues, pipes, wiring and drains.

**d.**     We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and b. above. However, if the cost to repair or replace the damage is both:

        **(1)**     Less than 5% of the amount of insurance in this policy on the building; and

        **(2)**     Less than $2,500; we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.**     You may disregard the replacement cost loss settlement provisions and make claim under this Policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D**. Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building. However, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, this 180-day period does not commence until the state of emergency or disaster has ended and you have access to your property.

HO 00 03 05 11 (Pages 14-15 of 24) as amended by HO3 SP LA 19.09 (Page 7 of 14)

## **TWENTY-FIRST DEFENSE**

Plaintiff is limited to a maximum of 10% of the limit of liability for Coverage A for increased costs for the enforcement of any ordinance or law, as follows:

**11.**    **Ordinance Or Law**

    **a.**     You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

        **(1)**     The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

        **(2)**     The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally

demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants in or on any covered building or other structure. Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

This coverage is additional insurance.

HO 00 03 05 11 (Pages 8-9 of 24)

## <u>TWENTY-SECOND DEFENSE</u>

In the further alternative, Allied Trust asserts that there is no insurance coverage for the claims of Plaintiff based upon, but not limited to the following:

### C. COVERAGE D – LOSS OF USE

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense and **2.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**
If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

In either event, the payment(s) will be limited to (12) consecutive months from the date of the covered loss.

**2. Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in 1. Additional Living Expense above for no more than two weeks.

**3. Loss Or Expense Not Covered**

We do not cover loss or expense due to:

**a.** Cancellation of a lease or agreement; or

**b.** Any "insured's" "business" whether located on the "insured location" or any other location.

The periods of time under **1.** Additional Living Expense and **2.** Civil Authority Prohibits Use above are not limited by expiration of this policy.

HO3 SP LA 19.09 (Page 3 of 14)

## <u>TWENTY-THIRD DEFENSE</u>

To the extent it is later determined that any insured's intentional act caused or contributed to the loss, then there is no coverage for Plaintiff's claims.

**SECTION I – EXCLUSIONS**

**8. Intentional Loss**

Intentional Loss means any loss arising out of any act committed:

**a.** With respect to loss caused by fire:

**(1)** By or at the direction of the "insured"; and

**(2)** With the intent to cause a loss.

**b.** With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this Policy:

**(1)** By you or at your direction; and

**(2)** With the intent to cause a loss.

HO3 SP LA 19.09 (Page 5 of 14)

**TWENTY-FOURTH DEFENSE**

Plaintiff's claims are limited by the Limited Fungi, Mold, Wet Or Dry Rot Or Bacteria

Coverage endorsement contained in Form ALLIED HO LMC 16.03, the terms, conditions,

provisions and exclusions of which are pled as if copied herein *in extenso:*

### LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE – LOUISIANA
### SCHEDULE

| | | |
|---|---|---|
| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of | | |
| 1. | Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry | $ 10,000 Aggregate Limit |
| 2. | Section II – Coverage E Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or | $10,000 per Occurrence/ Aggregate Limit |
| Information required to complete this Schedule, if not shown above, will be shown in the | | |

**DEFINITIONS**

The following definitions are added:

> **"Fungi"**
>
> **a.** "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.
>
> **b**. Under Section **II**, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.
>
> **"Bacteria"**
>
> "Bacteria" means any type, kind or form of bacterium.

**SECTION I – PROPERTY COVERAGES**
**E.     Additional Coverages**

Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.
The following Additional Coverage is added:

**13.     "Fungi", Wet or Dry Rot, Or "Bacteria"**

> **a.** The amount shown in the Schedule above is the most we will pay for:
>
> **(1)** The total of all loss payable under Section **I** – Property Coverages caused by "fungi", wet or dry rot, or "bacteria";
>
> **(2)** The cost to remove "fungi", wet or dry rot, or "bacteria" from property covered under Section **I** – Property Coverages;

    **(3)**    The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or "bacteria"; and

    **(4)**    The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or "bacteria".

**b.**    The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

**c.**    The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

    **(1)**    Number of locations insured under this endorsement; or

    **(2)**    Number of claims made.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST
## In Form HO 00 03:

**A.**    **Coverage A – Dwelling And Coverage B -**
Other Structures
Paragraph **2.c.(5)** is replaced by the following:

    **(5)**    Caused by constant or repeated seepage or leakage of water or the presence of and/or or condensation of humidity, moisture or vapor, over a period of 14 or more days unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure and is not directly or indirectly caused or resulting from neglect, lack of maintenance, lack of replacement or repairs.

Paragraph **2.c.(6)(c)** is replaced by the following:

    **(c)**    Smog, rust or other corrosion;

**B.**    **Coverage C – Personal Property**

    **12.**    **Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is replaced by the following:

    **(4)**    Caused by constant or repeated seepage or leakage of water or the presence of and/or or condensation of humidity, moisture or vapor, over a period of 14 or more days unless

such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure and is not directly or indirectly caused or resulting from neglect, lack of maintenance, lack of replacement or repairs.

In Form **HO 00 05**:

**A.**     Under Coverages **A, B** and **C**:

Paragraph **2.d.** is replaced by the following:

    **d.**     Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is replaced by the following:

    **(3)**     Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

**Exclusion A.10. is added:**

    **10.**     **"Fungi'", Wet Or Dry Rot, Or "Bacteria"**

"Fungi", Wet Or Dry Rot, Or "Bacteria" meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or "bacteria".

This exclusion does not apply:

    **a.**     When "fungi", wet or dry rot, or "bacteria" results from fire or lightning;

    **b.**     To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or "Bacteria" Additional Coverage under Section **I** –Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning; or

    **c.**     With respect to "fungi", wet or dry rot, or "bacteria" that is located on the portion of the covered property that must be repaired or replaced because of direct physical damage caused by a Peril Insured Against. However, the exclusion shall continue to apply to:

        **(1)**     The cost to treat, contain, remove or dispose of "fungi", wet or dry rot, or "bacteria" beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against;

        **(2)**     The cost of any testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or "bacteria" whether performed prior to, during

or after removal, repair, restoration or replacement; and

**(3)** Any increase in loss under Coverage **D**
– Loss Of Use and Additional Coverage
**1.** Debris Removal resulting from **c.(1)** and **(2)**.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or "bacteria" is covered.


## SECTION I – CONDITIONS

Condition **Q. Policy Period** is replaced by the following:

**Q.** **Policy Period**

This policy applies to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition **A. Limit Of Liability** is replaced by the following:

**A.** **Limit Of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or "bacteria" will not be more than the Section **II** –Coverage **E** Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria". That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;
**2.** Number of persons injured;
**3.** Number of persons whose property is damaged;
**4.** Number of "insureds"; or
**5.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period

and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or "bacteria" described in Condition **A.** Limit Of Liability of this endorsement, Condition **B**. **Severability Of Insurance** is replaced by the following:

**B.**     **Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** – Conditions, **A**. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

## TWENTY-FIFTH DEFENSE

Plaintiff's claims are subject to the Calendar Year "Named Storm" Deductible – Louisiana

Endorsement as follows:

## CALENDAR YEAR "NAMED STORM"
## DEDUCTIBLE – LOUISIANA
## SCHEDULE

| "Named Storm" Deductible: |
| --- |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.**     **Definitions**
The following definition is added for the deductible provided by this endorsement:
"Named Storm" means a storm system that has been declared a "Named Storm" by the National Hurricane Center of the National Weather Service.

**B.**     **Section I – Conditions**
The following special deductible provisions are added to the policy:

**1.**     **Applicable "Named Storm" Deductible**
    **a.**     The applicable "Named Storm" deductible:
        **(1)**     Is either:
            **(a)**     The dollar amount shown in the Schedule as the "Named Storm" Deductible; or
            **(b)**     If a percentage is shown in the Schedule, the dollar amount determined by multiplying the Coverage **A** Limit Of Liability shown in the Declarations by the percentage shown as the "Named Storm" Deductible in the Schedule.

**(2)** Shall apply during the period:

**(a)** Beginning at the time a "Named Storm" watch or "Named Storm" warning is issued for any part of the state of Louisiana by the National Hurricane Center of the National Weather Service;

**(b)** Continuing for the time period which the "Named Storm" conditions exist anywhere in the state; and

**(c)** Ending 72 hours following the termination of the last "Named Storm" watch or "Named Storm" warning for any part of the state of Louisiana by the National Hurricane Center of the National Weather Service.

**2. Calendar Year "Named Storm" Deductible**

The following provision apply only if the "residence premises" is a one- or two-family owner-occupied dwelling:

**a.** Subject to Paragraph **B.3.b.** of this endorsement, the applicable "Named Storm" deductible described in Paragraph **B.1.** of this endorsement is a calendar year deductible and applies to all covered "Named Storm" losses resulting from one or more "Named Storms" during the same calendar year.

**b.** With respect to a covered "Named Storm" loss:

**(1)** Resulting from the first "Named Storm" during a calendar year, we will pay only that part of the total of all loss payable that exceeds the applicable "Named Storm" deductible described in Paragraph **B.1.** of this endorsement.

**(2)** Resulting from the second, and each subsequent, "Named Storm" during the same calendar year, we will pay only that part of the total of all loss payable that exceeds the greater of:

**(a)** The remaining dollar amount of the applicable "Named Storm" deductible described in Paragraph **B.1.** of this endorsement for that calendar year; or

**(b)** The deductible that applies to all perils other than "Named Storm"

**c.** You must maintain receipts or other records of all covered "Named Storm" losses, resulting from any "Named Storm", that are less than the applicable "Named Storm" deductible, and provide us with such receipts or other records as often as we reasonably require, so that we may consider the amount of such losses when adjusting claims resulting from

any subsequent "Named Storm" during the same calendar year.

**d.**     No other deductible applies to loss caused by the peril of "Named Storm" during the period described in Paragraph **B.1.a.(2)** of this endorsement.

**f.**     Refer to the policy Declarations for the deductible that applies to loss caused by the peril of Windstorm or Hail other than during the period described in Paragraph **B.1.a.(2)** of this endorsement.

All other provisions of this policy apply.

ALLIED HO3 CYNS LA 16.06 (Pages 1-2 of 2)

## **TWENTY-SIXTH DEFENSE**

Based on the policy terms, conditions, provisions and exclusions, but not limited to those specifically set forth above, Allied Trust submits that the Policy of Insurance issued to Plaintiff does not provide coverage for the claims asserted in this lawsuit.

## **TWENTY-SEVENTH DEFENSE**

Separately and independently, Allied Trust is entitled to a declaration that Plaintiff's alleged damages were not caused by a PERIL INSURED AGAINST under the Allied Trust Policy.

## **TWENTY-EIGHTH DEFENSE**

Separately and independently, Allied Trust is entitled to a declaration that coverage for Plaintiff's claims is precluded by one or more exclusions in the Allied Trust Policy.

## **TWENTY-NINETH DEFENSE**

Although Allied Trust denies that it in any manner breached its contractual or statutory duties to Plaintiff, should Plaintiff establish a breach of contract and/or violation of statutory duties, Plaintiff has not suffered any real damages as a result of said breach and/or violation of statutory duties and/or any other action or inaction by Allied Trust.

## THIRTIETH DEFENSE

In the alternative, Plaintiff has not been damaged as result of any alleged actions or inactions on the part of Allied Trust. If Plaintiff suffered any damages as alleged, such damage was caused in whole or in part by the action or inaction of Plaintiff and/or third parties for whom Allied Trust is not responsible and/or forces beyond Allied Trust's control, thereby reducing any recovery herein proportionate to the comparative fault of Plaintiff and/or those third parties.

## THIRTY-FIRST DEFENSE

In the further alternative, Plaintiff's claims are barred or reduced to the extent that Plaintiff has failed to mitigate their alleged damages.

## RESERVATION OF AFFIRMATIVE DEFENSES

Allied Trust is without knowledge or information sufficient to form a belief as to whether other affirmative defenses apply in this matter. However, contingent on the facts revealed by investigation and discovery, Allied Trust expressly reserves its right to raise any additional affirmative defenses, which may be applicable.

AND NOW, further answering the Plaintiff's Complaint, Allied Trust Insurance Company, respectfully avers as follows:

1.

The allegations of Paragraph 1 of the Complaint are denied for a lack of information sufficient to justify a belief herein.

2.

The allegations of Paragraph 2 of the Complaint are denied except to admit the name of Allied Trust Insurance Company.

3.

The allegations of Paragraph 3 of the Complaint contain legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied.

4.

The allegations of Paragraph 4 of the Complaint are denied.

5.

The allegations of Paragraph 5 of the Complaint state legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied.

6.

The allegations of Paragraph 6 of the Complaint state legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied.

7.

The allegations of Paragraph 7 of the Complaint state legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied.

8.

The allegations of Paragraph 8 of the Complaint are denied except to admit that Allied Trust issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Allied Trust pleads such terms, conditions, provisions and exclusions as if copied hereto *in extenso*.

9.

The allegations of Paragraph 9 of the Complaint are denied for lack of information sufficient to justify a belief herein.

10.

The allegations of Paragraph 10 of the Complaint are denied except to admit that Allied Trust issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Allied Trust pleads such terms, conditions, provisions and exclusions as if copied hereto *in extenso*.

11.

The allegations of Paragraph 11 of the Complaint are denied except to admit that Allied Trust issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Allied Trust pleads such terms, conditions, provisions and exclusions as if copied hereto *in extenso*.

12.

The allegations of Paragraph 12 of the Complaint are denied for lack of information sufficient to justify a belief herein.

13.

The allegations of Paragraph 13 of the Complaint are denied except to admit that Hurricane Ida made landfall in the Chalmette, Louisiana area on or about August 29, 2021, and that Allied Trust issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Allied Trust pleads such terms, conditions, provisions and exclusions as if copied hereto *in extenso*.

14.

The allegations of Paragraph 14 of the Complaint are denied except to admit that Hurricane Ida made landfall in the Chalmette, Louisiana area on or about August 29, 2021.

15.

The allegations of Paragraph 15 of the Complaint are denied except to admit that Hurricane Ida made landfall in the Chalmette, Louisiana area on or about August 29, 2021.

16.

The allegations of Paragraph 16 of the Complaint are denied as written.

17.

The allegations of Paragraph 17 of the Complaint are denied except to admit that Hurricane Ida made landfall in the Chalmette, Louisiana area on or about August 29, 2021.

18.

The allegations of Paragraph 18 of the Complaint are denied as written.

19.

The allegations of Paragraph 19 of the Complaint are denied as written.

20.

The allegations of Paragraph 20 of the Complaint are denied except to admit that Allied Trust issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Allied Trust pleads such terms, conditions, provisions and exclusions as if copied hereto *in extenso*.

21.

The allegations of Paragraph 21 of the Complaint are denied.

22.

The allegations of Paragraph 22 of the Complaint state legal conclusions for which no answer is required. To the extent a response is required, the allegations are denied as written.

<center>23.</center>

The allegations of Paragraph 23 of the Complaint are denied as written.

<center>24.</center>

The allegations of Paragraph 24 of the Complaint state legal conclusions for which no answer is required. To the extent a response is required, the allegations are denied as written.

<center>25.</center>

The allegations of Paragraph 25 of the Complaint state legal conclusions for which no answer is required. To the extent a response is required, the allegations are denied as written.

<center>26.</center>

The allegations of Paragraph 26 of the Complaint state legal conclusions for which no answer is required. To the extent a response is required, the allegations are denied as written.

<center>27.</center>

The allegations of Paragraph 27 of the Complaint state legal conclusions for which no answer is required. To the extent a response is required, the allegations are denied as written.

<center>28.</center>

The allegations of Paragraph 28 of the Complaint state legal conclusions for which no answer is required. To the extent a response is required, the allegations are denied as written.

<center>29.</center>

The allegations of Paragraph 29 of the Complaint state legal conclusions for which no answer is required. To the extent a response is required, the allegations are denied.

<center>30.</center>

The allegations of Paragraph 30 of the Complaint are denied.

31.

The allegations of Paragraph 31 of the Complaint are denied as written.

32.

The allegations of Paragraph 32 of the Complaint are denied.

33.

The allegations of Paragraph 33 of the Complaint are denied.

34.

The allegations of Paragraph 34 of the Complaint are denied.

35.

The allegations of Paragraph 35 of the Complaint are denied.

36.

The allegations of Paragraph 36 of the Complaint are denied.

37.

The allegations of Paragraph 37 of the Complaint are denied.

38.

The allegations of Paragraph 38 of the Complaint are denied.

39.

The allegations of Paragraph 39 of the Complaint are denied.

40.

The allegations of Paragraph 40 of the Complaint are denied.

41.

The allegations of Paragraph 41 of the Complaint, including but not limited to subparagraphs a-g, are denied.

<center>42.</center>

The allegations of Paragraph 42 of the Complaint do not require a response from this Defendant.

<center>43.</center>

The allegations of the unnumbered paragraph following Paragraph 42 of the Complaint, beginning with "WHEREFORE, and under the subheading "PRAYER", is Plaintiff's Prayer for Relief which requires no response from this Defendant. To the extent a response is required, Plaintiff's Prayer for Relief is denied.

<center>44.</center>

The allegations contained in any and all un-numbered, mis-numbered paragraphs or other allegations not heretofore addressed, are denied.

## <center>REQUEST FOR JURY TRIAL</center>

Pursuant to the Seventh Amendment of the United States Constitution and Louisiana Code of Civil Procedure, Allied Trust Insurance Company requests a jury for all issues triable at the trial of this matter.

## <center>PRAYER FOR RELIEF</center>

**WHEREFORE**, the premises considered, Defendant, Allied Trust Insurance Company, prays that this Answer to the Complaint be deemed good and sufficient and after due proceedings are had, that there be judgment herein in favor of Allied Trust Insurance Company and against Plaintiff, dismissing Plaintiff's Complaint, with prejudice, at Plaintiff's costs and for all other general and equitable relief as it appropriate under the circumstances.

**FURTHER**, Allied Trust Insurance Company prays for a trial by jury on all matters involving this litigation.

Respectfully submitted,

/s/ Matthew D. Monson
**MATTHEW D. MONSON (25186)**
**JOHN C. HENRY (18948)**
**RACHEL L. FLARITY (33131)**
**JOHN D. MINEO, IV (36587)**
**ERIN W. BERGGREN (37551)**
**LAUREN A. LAM (37758)**
**NATHAN R. HAND (38011)**
**KYLE C. MATTHIAS (38338)**
**ROWAN W. STOEHR (39061)**
**AUSTIN T. WELCH (40100)**
**THE MONSON LAW FIRM, LLC**
5 Sanctuary Blvd., Ste. 101
Mandeville, Louisiana 70471
Telephone:    (985) 778-0678
Facsimile:     (985) 778-0682
*Email: Matthew@MonsonFirm.com*
***Counsel for Defendant, Allied Trust Insurance Company***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to CM/ECF participating parties. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the non-CM/ECF participating parties.

/s/ Matthew D. Monson